IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 1:22-cr-001 (MSN) |
| | ) | |
| KEIRA TA | ) | |

**POSITION OF THE UNITED STATES ON SENTENCING**

For almost a decade, the Reccless Tigers and those associated with the gang engaged in a pattern of racketeering activity throughout the Eastern District of Virginia and elsewhere: they trafficked dangerous controlled substances, committed numerous acts of violence, and laundered money, among other crimes. As the gang grew in size and violence, the success and continued operation of the gang relied on instilling discipline and fear both within and outside of its ranks. In other words, as is the case with many criminal organizations, obstruction of justice—and in particular witness tampering—was necessary to the survival of the gang.

The defendant, Keira Ta, comes before the Court for sentencing after pleading guilty to Witness Tampering in violation of Title 18, United States Code, Section 1512(b)(1). The United States has reviewed the Presentence Report and concurs with the findings of the Probation Office. For the reasons stated herein, the United States respectfully submits that a sentence of 21 months of incarceration is sufficient but not greater than necessary to achieve the goals of sentencing.

**I.     Background**

The defendant, Keira Ta, is the twenty-seventh defendant to be sentenced as a result of the government's investigation of the Reccless Tigers and its associates. The Presentence Report

describes in detail the gang's history, narcotics trafficking, and acts of violence as well as the role of the defendant in the charged offense. Dkt. 390 at ¶¶ 44-260. The Fourth Superseding Indictment from the case that the defendant obstructed, *United States v. Le et al*, similarly describes the history and structure of the gang and its decade-long pattern of racketeering activity. Fourth Superseding Indictment, Case no. 1:20-cr-57 (LO) (ECF 439). As the gang's drug business grew over the years, so did the occurrence of violent crimes by its members. These include simple assaults, malicious woundings, gang fights, burglaries, robberies, extortion, abductions, shootings, firebombing of homes, attempted homicides, and two homicides.

    The defendant became a member of the Reccless Tigers in 2016 when the Lady Tigers (a.k.a "Lady T's") subset was formed. In order to formally become a member of the gang, she was "jumped in;" an initiation process involving being beaten by—and in this instance also beating up—other actual or potential gang members. Just like other members of the gang, the defendant was expected to participate in fights on behalf of the gang and to maintain the reputation of the gang. In addition to her participation in the gang's acts of violence, the defendant also distributed controlled substances on behalf of the gang at pop-up dispensaries in Washington, D.C.

    Following criminal racketeering and other charges against numerous members of the Reccless Tigers gang, the defendant maintained her connections with the gang. In particular, the defendant maintained telephonic contact with one of the leaders of the Reccless Tigers, Tony Le. In many of these calls, the two discussed, in addition to trivial things, the upcoming trial against Le, the charges against other gang members and associates, and who in particular was cooperating against those members of the gang that were proceeding to trial.

    One tenet of membership in the Reccless Tigers was violent retribution against those

deemed by the gang to be "snitches"—a reference to those who cooperate with law enforcement against other gang members. PSR ¶ 137. Among other means, gang members used social media to convey threats to witnesses and inform other gang-members of the identities of snitches. PSR ¶ 205.[1] These were no empty threats. The gang's acts of retaliation included physical assaults, firebombings of occupied residences, and even murder. PSR ¶ 56. Trial preparation with witnesses in both the *Le et al* trial as well as in the instant case revealed that many such posts by gang members and associates reached their intended targets. Several witnesses were terrified to testify against members of the gang.

On April 11, 2022, trial commenced against Tony Le and others in the United States District Court for the Eastern District of Virginia, in *United States v. Le et al*, 1:19-cr-57 (LO). The allegations in that trial included, inter alia, that certain defendants were involved in the murder of Brandon White, a former witness in a Commonwealth prosecution against a member of the Reccless Tigers gang.[2] The allegations also included an assault and eventual firebombing of the residence of another individual, Witness-1, who cooperated with law enforcement against a member of the gang.

On the evening of April 10, 2022, the night before the trial began the United States

---

[1] For example, in addition to the defendant's own post that resulted in the instant charge, a fellow gang member Sang Thanh Huynh, threatened violence against "snitches" frequently on social media. In one such post, Huynh repeatedly stabs a sofa while stating that this is what happens to "snitches." In another video, he states that he likes to smoke "rats." In yet another post, he threatens to "put on blast" those who "snitch."

[2] In particular, following White's testimony in a Commonwealth case, a gang member disseminated a police report summarizing Brandon White's statements to law enforcement. The report contained handwritten comments identifying Brandon White as a "snitch" and instructing a fellow gang member to send pictures of the report to members of the Reccless Tigers to put on Instagram and Snapchat so they would know white was a "snitch." PSR ¶ 205. Brandon White was murdered less than two and a half months after Brandon testified against a member of the Reccless Tigers.

provided the defense, subject to the protective order in the case, a witness list via email for the first two days of trial. Pursuant to that order, defendant Tony Le, was prohibited from using "discovery materials, and the content contained therein, for any purpose other than preparing to defend against the criminal charges in this matter." Protective Order, *United States v. Le et al*, Case No. 1: 19-cr-57 (ECF No. 244).

As further described in the Statement of Facts, on the evening of April 11, 2022, the first day of trial, and after a jury had been selected, the defendant was providing information about the upcoming trial to friends and associates of the gang, discussing who was cooperating with law enforcement, and the defendant was warned by one individual not to "talk shit to" testifying witnesses. Statement of Facts ¶20(d). Thereafter Tony Le called the defendant from prison, disclosed the confidential identities of the government's upcoming witnesses, told the defendant that "everyday I'm going to tell you the new people that comes up," and instructed her to post the address of the Courthouse. Despite the warning she had received that very day, the defendant confirmed her agreement with the plan to Tony Le. That evening, the defendant posted a "story" on Instagram revealing the names of the government's upcoming witnesses, stating in full "WATCH THE SNITCHES SNITCHING, THIS WEEK TUES-THURS" listing five of the government's witnesses by name and/or known nick name, with each name followed by "SNITCH." The defendant then listed the address of the United States District Court for the Eastern District of Virginia.

## II.     Sentencing Guidelines

Section 2J1.2(c)(1) of the Sentencing guidelines generally governs obstruction-related offenses. If the defendant obstructed the investigation or prosecution of a criminal offense, section 2J1.2(c)(1) requires the court to apply section 2X3.1 (Accessory After the Fact) with

respect to that offense, if the resulting offense level will be greater than that determined by applying sections 2J1.2(a) and (b). This cross-reference hinges the punishment for those like the defendant who tamper with witnesses on the severity of the offense that they obstructed by using the base offense level for the underlying offense as the starting point for calculating the defendant's offense level. The guidelines thereby "provide an enhanced offense level when the obstruction is in respect to a particularly serious offense, whether such offense was committed by the defendant or another person." 2J1.2 cmt. background; *see also United States v. Cross*, 371 F.3d 176, 182 (4th Cir. 2004) (noting that 2X3.1 "punishes more severely those who act as accessories-after-the-fact to more serious crimes.").

Applying 2X3.1, the Probation Office determined that the defendant's base offense level is 30. The government agrees with that determination. Further, the United States agrees that the defendant has assisted authorities in the prosecution of her own misconduct by timely notifying the United States of her intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the Court to allocate their resources effectively. This one-level decrease has already been taken into account by the Probation Office in its guideline calculations and is reflected in Paragraph 281 of the Presentence Report. The defendant therefore has an offense level total of 27. (Dkt. 47, ¶¶ 273-83).

### III. The 18 U.S.C. § 3553 Factors

The United States submits that a guideline sentence of 21 months is consistent with the factors articulated in 18 U.S.C. § 3553, which the Court must take into account when imposing its sentence.

Of primary importance in this case is the need for the sentence imposed to promote respect for the law, reflect the seriousness of the offense and provide adequate deterrence.

5

Intimidation of witnesses is an extremely serious offense that threatens the integrity of the criminal justice system. It puts in jeopardy the function of federal courts, the ability of the Department of Justice to effectively prosecute crime, and the safety of innocent victims and witnesses. As Congress recognized in enacting the statute with which the defendant is charged, "without the cooperation of victims and witnesses, the criminal justice system would simply cease to function and few criminals, if any, would be brought to justice." S. REP. 97-532, 10, 1982 U.S.C.C.A.N. 2515, 2516.

    The defendant's actions in this particular case demonstrate those very harms. Her actions risked the integrity of a trial against four defendants facing significant sentences, three of which were charged with the murder of Brandon White. Her actions threatened, and indeed had a real effect on, the ability of the prosecution to elicit testimony in the course of its trial. Lastly and most importantly, her actions threatened the safety of and instilled fear in the witnesses she targeted. Unfortunately, for some of these witnesses, the defendant's threat was not the first time they had been victimized by the Reccless Tigers. Witness-1 for example had previously been assaulted by a gang member, cooperated with law enforcement, and thereafter had his family's residence firebombed and vandalized on numerous occasions in acts of retaliation. Another witness, Witness-2, had lost his childhood friend to a senseless act of violence at a Reccless Tigers gang party hosted at an Airbnb. These witnesses overcame very real fears and past trauma to agree to testify and bring members of the Reccless Tigers to justice, only to have their wounds reopened on the eve of their testimony. The defendant's choice to tamper in this particular trial—a trial that sought to right the wrongs of the Reccless Tigers' prior intimidation and silencing of those who report criminal behavior—merits serious consequences to deter this defendant and others from threatening the administration of justice.

To her credit, the defendant's written statement to the court reflects an acceptance of responsibility for, and new appreciation of, the harms caused by her actions. The United States has considered the defendant's lack of prior criminal history, relative culpability as compared to other members of this conspiracy, and apparent remorse in recommending a below-guidelines sentence of 21 months.

## CONCLUSION

For the reasons stated herein, the United States submits that a sentence of imprisonment of 21 months is sufficient but not greater than necessary to satisfy the sentencing factors in Section 3553(a) in this case.

Respectfully submitted,

Jessica D. Aber
United States Attorney

By:  _____/s/_____
Heather D. Call
Ryan B. Bredemeier
Assistant United States Attorneys
2100 Jamieson Avenue
Alexandria, Virginia 22314
(703) 299-3728
heather.call@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on the 9th day of February, 2023, I filed the foregoing pleading with the Clerk of Court using the Court's electronic filing system, which will serve all counsel of record.

By:          /s/
Heather D. Call
Assistant United States Attorney
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
(703) 299-3728
Heather.call@usdoj.gov